WO

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard S. Berry, et al., | No. CV-04-2309-PHX-SRB |
| Plaintiffs, | **ORDER** |
| vs. | |
| Linda Grau, et al., | |
| Defendants. | |

Before the Court are the Defendant Board Members'[1] Motion to Dismiss (Doc. 50), Plaintiffs' Motion for Leave to Serve Replacement Summons and Motion for an Order Issuing New Replacement Summons (Doc. 61), and Plaintiff Richard S. Berry's Motion for Partial Summary Judgment seeking an order that Arizona Code of Judicial Administration ("ACJA") Rule 7-208(E)(3)(c)([7])[2] is unconstitutional as applied to him (Doc. 51).

---

[1] The "Defendant Board Members" bringing this Motion to Dismiss – all members of the Board of Legal Document Preparers – are Roland J. Steinle, III, Virlynn Tinnell, Roger E. Hartley, Margaret J. Kleinman, J. Ward Sturm, Mary Carlton, Susan C. Vasquez, Vellia M. Pina, Carol L. Wells, Donald F. Steward, and Nancy Swetnam.

[2] Plaintiff's motion says it is seeking a declaration as to the constitutionality of ACJA Rule 7-208(E)(3)(c)(4), but quotes the language from ACJA Rule 7-208(E)(3)(c)(7) ("No person who has been disbarred by the highest court in any state, and who has not been reinstated, may retain any ownership interest in a certified legal document preparer business."). Therefore, the Court will refer to ACJA 7-208(E)(3)(c)(7) where it appears clear to the Court that is the section to which Plaintiff and Defendants are referring.

## I. BACKGROUND

Plaintiff Richard S. Berry[3] was disbarred by the Arizona Supreme Court in 1978 and has not been reinstated. Prior to July 1, 2003, Plaintiff "was the owner" or had an "ownership interest" in a Certified Legal Document Preparer ("CLDP") business owned and operated by a Nevada corporation known as Why Pay a Lawyer? ("WPAL"). (Pl.'s Statement of Facts in Supp. of Mot. for Partial Summ. J. ("PSOF") ¶ 3.) Plaintiff says that prior to July 1, 2003, WPAL "employed up to four persons" at several business locations in the Phoenix area, "and grossed $300,000 to $400,000 per year in the CLDP business yearly over the past five years." (PSOF ¶ 6.)

The Arizona Supreme Court oversees the practice of law in Arizona and promulgates rules governing the practice of law in the state. Rule 31 of the Arizona Supreme Court defines the "practice of law" to include "preparing any document in any medium intended to secure legal rights for a specific person or entity" and "preparing any document through any medium for filing in any court, administrative agency or tribunal for a specific person or entity." *Id.*, Rule 31(a)(2)(A)(1) & (5). The rule limits the practice of law in Arizona to active members of the state bar and to those coming under one of the twenty-six exemptions to the rule. *Id.,* Rule 31(c). One of those exemptions is for certified legal document preparers "performing services in compliance with Arizona Code of Judicial Administration, Part 7, Chapter 2, Section 7-208 ["ACJA Rule 7-208"]." *Id.,* Rule 31(d)(23). ACJA Rule 7-208 became effective on July 1, 2003, and it provides, in part, that "[n]o person who has been disbarred by the highest court in any state, and who has not been reinstated, may retain any ownership interest in a certified legal document preparer business." ACJA Rule 7-208(E)(3)(c)(7).

---

[3] In addition to Plaintiff Richard S. Berry, the Complaint names as Plaintiffs Jean D. Berry, Rose Quintero, Jace Gaston and Robert Pilkington. However, the Motion for Partial Summary Judgment was brought on behalf of Plaintiff Richard S. Berry alone. Therefore, the Court will use "Plaintiff" when referring to Richard S. Berry only, and "Plaintiffs" when referring to all five Plaintiffs.

- 2 -

The Arizona Supreme Court created the Board of Legal Document Preparers ("Board") to administer the legal document preparer program set forth in ACJA Rule 7-208. According to the Board, the prohibition against disbarred attorneys owning a CLDP business "applies to any and all attorneys disbarred by the highest court in any state who has not been reinstated to practice law. Therefore, any disbarred attorney, regardless of where he is disbarred is prohibited from ownership interest in a certified legal documents preparer business." (Defs. Linda Grau's and Board of Legal Document Preparers' Statement of Facts in Supp. of the Resp. to Pl.'s Mot. for Partial Summ. J. ("Defs. Grau's and Board's SOF") ¶ 7.)

Plaintiff "has applied for readmission to the bar three times since his disbarment, and has been rejected for readmission; the last application for readmission was in the mid 1980's." (PSOF ¶ 16.) Because he has been disbarred, and since the effective date of ACJA Rule 7-208(E)(3)(c)(7), Plaintiff has not been "permitted to have ownership interest in a certified legal document preparer business." (Defs. Grau's and Board's SOF ¶ 6.) Plaintiff claims that ACJA Rule 7-208(E)(3)(c)(7) "rendered [his] 'ownership interest', if any, in WPAL, an illegal act and not maintainable merely by his being a disbarred lawyer holding an 'ownership interest' therein." (PSOF ¶ 10.) Plaintiff also claims that "[i]f [he] had any 'ownership interest' in WPAL on July 1, 2003, ACJA [Rule] 7-208(E)(3)(c)([7]) took or canceled same without hearing upon its enactment that 'ownership interest' without compensation." (PSOF ¶ 9.)

Plaintiffs filed suit in October 2004 claiming violations of the First and Fourteenth Amendments to the U.S. Constitution, "the Commerce Clause, the Equal Protection Clause, the Due Process of Law Clause, the Privileges and Immunities Clause, and various laws (antitrust) of the United States." (Second Am. Compl. ("SAC" or "Complaint") ¶ 1.) The

named Defendants are the Arizona Supreme Court[4]; the State Bar of Arizona ("State Bar") and its employee Fran Johanson; the Board and its employees Linda Grau, Roland J. Steinle, III, Virlynn Tinnell, Roger E. Hartley, Margaret J. Kleinman, J. Ward Sturm, Mary Carlton, Susan C. Vasquez, Vellia M. Pina, Carol L. Wells, Donald F. Steward, and Nancy Swetnam; and Alan Merrill, "a CLDP, who has acted for and on behalf of the other defendants from to time [sic] as alleged below." (SAC ¶¶ 3-7.) Plaintiffs allege that "[o]ne or more of the Plaintiffs has experienced and remains experiencing irreparable harm and constitutionally compensable injury and deprivation in what is alleged . . . ." (SAC ¶ 11.) Plaintiffs bring eight claims in all. In addition to declaratory and injunctive relief, Plaintiffs are seeking $5,000,000 in "special and compensatory damages" under six of the counts, $50,000,000 in "exemplary and punitive damages" under three counts, as well as an order from this Court that the rules of the Arizona Supreme Court at issue in this action are unconstitutional.

The Defendant Board Members (Steinle, Tinnell, Hartley, Steinman, Sturm, Carlton, Vasquez, Pina, Wells, Steward and Swetnam) filed a motion to dismiss them with prejudice from this action because they were not timely served. (Def. Bd. Members' Mot. to Dismiss at 2.)

This was followed by Plaintiff's Motion for Partial Summary Judgment. The Court granted Defendant Board Members' Motion to Stay their response to Plaintiff's Motion pending a decision on the merits of Defendant Board Members' Motion to Dismiss.

## II.   MOTION TO DISMISS FOR UNTIMELY SERVICE

The Defendant Board Members filed a motion to dismiss them as Defendants because they were not served within 120 days of the filing of the Complaint, as required by Rule 4(m) of the Federal Rules of Civil Procedure. Rule 4(m) provides:

---

[4]This Court, on November 7, 2005, allowed Plaintiffs to file a Second Amended Complaint, which added the Arizona Supreme Court as a Defendant. The Complaint states that the Arizona Supreme Court "is the real party in interest and proper party defendant with respect to the claims for relief below which involve the constitutionality of rules of that court . . . ." (SAC ¶ 4.)

- 4 -

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion . . . after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

Plaintiffs in this case filed their initial Complaint on October 27, 2004. Service upon all Defendants was due February 24, 2005. Service was timely as to Defendants State Bar, the Board, Grau, Merrill, and Johanson. Plaintiffs sent a letter to the Assistant Attorney General ("Assistant A.G.") on December 3, 2004 requesting that she accept service on behalf of the Defendant Board Members, but that she never responded to their letter. (Pls.' Resp. to Def. Board Members' Mot. to Dismiss ("Pls.' Resp."); Ex. A.) Plaintiffs say they asked the Assistant A.G. again in March 2004 at a pre-trial conference to accept service. (Pls.' Resp. at 2.). Plaintiffs then delivered copies of the Complaint and documents soliciting voluntary acceptance of service to the Defendant Board Members in late March, after the due date, along with a letter notifying them "that the attorney general had refused to accept service for each of them although she had appeared for other state defendants on the same board." (Pls.' Resp. at 2.) Plaintiffs sent another letter dated April 6, 2005 to the Assistant A.G. requesting again that she accept service on behalf of the Defendant Board Members but never received a response to that letter. (Pls.' Resp. at 2; Ex. B.) The Assistant A.G. did finally accept service on behalf of the Defendant Board Members on May 9, 2005. (Pls.' Resp. at 3.) Defendants never refute Plaintiffs' claims that they requested several times that the Assistant A.G. accept service on behalf of the Defendant Board Members.[5]

---

[5]In fact, Defendant Board Members never filed a Reply to Plaintiff's Response.

### A. Good Cause for Extending Service

When service of process is challenged, the plaintiff bears the burden of establishing the validity of service. *Sys. Signs Supplies v. U.S. Dep't of Justice,* 903 F.2d 1011, 1013 (5th Cir. 1990); *Walker & Zanger (West Coast) Ltd. v. Stone Design S.A.,* 4 F. Supp. 2d 931, 934 (C.D. Cal. 1997); *Neilson v. Beck,* 1994 WL 578465, at *2 (D. Or. Oct. 18, 1994). In deciding whether to extend the prescribed time period for service of a complaint, a court must extend the time period upon a showing of good cause, or, when good cause is lacking, "the court has discretion to dismiss without prejudice or to extend the time period." *In re Sheehan*, 253 F.3d 507, 513 (9th Cir. 2001)*; Matasareanu v. Williams,* 183 F.R.D. 242, 245-46 (C.D. Cal. 1998) (interpreting the good cause provision of Rule 4(m)). Good cause has been defined, "at a minimum," as "excusable neglect." *Elec. Specialty Co. v. Road and Ranch Supply, Inc.*, 967 F.2d 309, 312 (9th Cir. 1992) (applying this definition to Rule 4(m)'s predecessor, Rule 4(j)). Courts determine whether good cause exists "on a case by case basis." *In re Sheehan*, 253 F.3d at 511 (citation omitted). To constitute "good cause," a plaintiff may be required to show that "(a) the party to be served received actual notice of the lawsuit; (b) the defendant would suffer no prejudice; and (c) plaintiff would be severely prejudiced if his complaint were dismissed." *Id.* (quotations and citations omitted).

In this case, the Court finds that Plaintiffs have established good cause for failing to serve the Defendant Board Members within the 120-day time period. Defendants have not refuted Plaintiffs' claims that they requested in December 2004 that the Assistant A.G. accept service on behalf of the Defendant Board Members. Because the Board itself was properly served, it is likely that the Defendant Board Members received actual notice of the lawsuit. Nor have the Defendant Board Members claimed a lack of actual notice. The Defendant Board Members would not be prejudiced by acceptance of service after the 120-day deadline because they were provided with the Complaint and documents for acceptance of service approximately one month after the deadline, and the issues for the Defendant Board Members and the Board are substantially the same. Moreover, the same Assistant

A.G. has now accepted service for both the Board and the Defendant Board Members, and would likely be using the same defense for all Defendants.

### B. Discretionary Extension of Service

Alternatively, the Court could choose to exercise its broad Rule 4(m) discretion in granting an extension, thereby remedying any defects in Plaintiff's service of process upon Defendants Board Members. There is no precise list of factors for determining when to exercise Rule 4(m) discretion. *In re Sheehan*, 253 F.3d at 513. Among the factors courts have considered are whether the defendant had actual notice of the complaint, whether granting of an extension of time would result in prejudice to the defendant, whether the plaintiff's complaint might be re-filed under the statute of limitations if the current action were dismissed, whether the plaintiff eventually did serve the defendant, and how far past the deadline the service occurred. *Matasareanu*, 183 F.R.D. at 247-48 (listing above considerations). *See also De Tie v. Orange County*, 152 F.3d 1109, 1111 n.5 (9th Cir. 1998) (noting that discretionary relief may be justified if the complaint could not be re-filed under the statute of limitations). Prejudice, in the context of the court exercising its discretion, means the "impairment of defendant's ability to defend on the merits, rather than foregoing such a procedural or technical advantage." *Boley v. Kaymark*, 123 F.3d 756, 759 (3d Cir. 1997) (citation and internal quotations omitted).

In addition, while *pro se* litigants are subject to the same procedural requirements of Rule 4(m) as litigants represented by counsel, *Carter v. Comm'r of Internal Revenue*, 784 F.2d 1006, 1008 (9th Cir. 1986), the *pro se* status of a litigant is relevant to the decision to exercise discretion. *McGuckin v. Smith*, 974 F. 2d 1050, 1058 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997). Finally, there is a general judicial policy in favor of resolving issues upon their merits, rather than upon procedural grounds. *See, e.g.*, *Shore v. Henderson,* 168 F. Supp. 2d 428, 431-32 (E.D. Pa. 2001), *Slenzka v. Landstar Ranger, Inc.*, 204 F.R.D. 322, 326 (E.D. Mich. 2001), *Vergis v. Grand Victoria Casino & Resort*, 199 F.R.D. 216, 218 (S.D. Ohio 2000).

*Pro se* Plaintiffs in this case sent a letter to the Assistant A.G. in December 2004 requesting that she accept service on behalf of the Defendant Board Members. (Pls.' Resp. at 2; Ex. A.) Plaintiffs argue that "having appeared for some state defendants, her appearance for the other defendants would be a foregone conclusion, and none of the unserved state defendants would likely have any dissimilar defenses to the facts alleged in this action compared to those who were served and who had appeared." (Pls.' Resp. at 2.) Plaintiffs say they asked the Assistant A.G. again in March 2004 at a pre-trial conference to accept service. (Pls.' Resp. at 2.). Plaintiffs delivered copies of the Complaint to the Defendant Board Members in late March 2005, approximately one month after the deadline for service, and the Assistant A.G. accepted service on behalf of the Defendant Board Members on May 9, 2005. (Pls.' Resp. at 2-3.) Given the fact that Plaintiffs, who are *pro se*, made efforts to have the Assistant A.G. accept service for the Defendant Board Members, did in fact deliver the Complaint to the Defendant Board Members within approximately one month of the deadline, and that the same Assistant A.G. eventually accepted service on behalf of the Defendant Board Members, the Court exercises its discretion to extend the time for service.

The Defendant Board Members' Motion to Dismiss is denied.[6] Accordingly, Plaintiffs' Motion for Leave to Serve a New or Replacement Summons is denied as moot.

---

[6] The Defendant Board Members filed their Motion to Dismiss on July 11, 2005. Before responding to the Motion to Dismiss, Plaintiff filed his own Motion for Partial Summary Judgment on July 13, 2005. The Court granted the Defendant Board Members a stay on their response to Plaintiff's motion pending a decision on the Defendant Board Members' motion. The Court will now dissolve the stay and decide Plaintiff's Motion for Partial Summary Judgment. Although the Defendant Board Members have not yet responded to Plaintiff's motion, they are not prejudiced because the Court is denying Plaintiff's motion. Also, the Board and Grau, through the same Assistant A.G. who accepted service on behalf of the Defendant Board Members, have filed a response to Plaintiff's motion, and the State Bar and Johanson have joined in that response. Therefore, it is unlikely that the Defendant Board Members would be making any novel or dissimilar arguments in response to the motion.

### III. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

The standard for summary judgment is set forth in Rule 56(c) of the Federal Rules of Civil Procedure. Under this rule, summary judgment is properly granted when: (1) no genuine issues of material fact remain; and (2) after viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552-53 (1986); *Eisenberg v. Ins. Co. of N. Am.,* 815 F.2d 1285, 1288-89 (9th Cir. 1987).

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, if it is supported by affidavits or other evidentiary material. *Celotex,* 477 U.S. at 324, 106 S. Ct. at 2548; *Eisenberg,* 815 F.2d at 1289. However, the non-moving party may not merely rest on its pleadings, it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256-57, 106 S. Ct. 2505, 2513-14 (1986) (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S. Ct. 1575, 1592 (1968).

Plaintiff filed his Motion for Partial Summary Judgment seeking an order that ACJA Rule 7-208(E)(3)(c)(7) is unconstitutional "intrinsically and as applicable to him . . . ." (Pl.'s Mot. for Partial Summ. J. ("Pl.'s Mot.") at 1.)  Plaintiff argues that ACJA Rule 7-208(E)(3)(c)(7) is "a) a bill of attainder, b) a denial of equal application of the law, c) a denial of equal privileges and immunities, d) a seizure without due process, and e) it punishes status." (Pl.'s Mot. at 2.) While ACJA Rule 7-208(E)(3)(c)(7) *applies* to Plaintiff, as it does to anyone wanting to own a legal document preparer business, there is no evidence before the Court that ACJA Rule 7-208(E)(3)(c)(7) has been *applied* by the Board or any other governmental entity to Plaintiff.  As far as the Court can tell, Plaintiff has voluntarily complied with the rule by divesting himself of any ownership interest in WPAL. Therefore,

the Court will construe Plaintiff's claims as a facial challenge and not an "as applied" challenge.[7]

Whether a particular statute is constitutional is a matter of law for the court's determination. In federal court, to succeed on a facial challenge to a statute, a party must show that "[n]o set of circumstances exists under which the Act would be valid." *Ohio v. Akron Ctr. for Reproductive Health*, 497 U.S. 502, 514, 110 S. Ct. 2972, 2980-81 (1990) (citation omitted). "Where fairly possible, courts should construe a statute to avoid a danger of unconstitutionality." *Planned Parenthood Ass'n of Kansas City, Mo., Inc. v. Ashcroft*, 462 U.S. 476, 493, 103 S. Ct. 2517, 2526 (1983).

---

[7] Because there is no evidence before the Court that ACJA Rule 7-208(E)(3)(c)(7) has been applied to Plaintiff in any type of proceeding, Defendants' *Rooker-Feldman* argument does not apply. "Under *Rooker-Feldman*, lower federal courts are without subject matter jurisdiction to review state court decisions and state court litigants may therefore only obtain federal review by filing a petition for a writ of certiorari in the Supreme Court of the United States." *Mothershed v. Justices of the Supreme Court*, 410 F.3d 602, 606 (9th Cir. 2005) (citing *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 415, 44 S. Ct. 149, 150 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 486-87, 103 S. Ct. 1303, 1316-17 (1983)). The Supreme Court recently clarified that the *Rooker-Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 125 S. Ct. 1517, 1521-22 (2005).

Here, there is no evidence before the Court suggesting that this is a *Rooker-Feldman* issue because there is no evidence that Plaintiff is asking this Court to reverse *any* decision by a state court. Plaintiff himself says "[t]his case involves no appeal from, or review of, anything judicially decided in state court. [Plaintiff] has never been subjected to anything adjudicatory in this matter. He complains only of a rule that literally 'disenfranchised' him by fiat from ownership of his property." (Pl.'s Reply at 2.) From the undisputed facts presented, Plaintiff owned or had an ownership interest in WPAL prior to July 1, 2003, but he no longer does "due to the fact that he cannot qualify under ACJA 7-208(E)(3)(c)([7]) for same since he is a disbarred lawyer." (PSOF ¶¶ 3, 18-19.) From these facts, and because neither party has informed the Court of any proceedings against Plaintiff, the Court discerns that Plaintiff voluntarily divested himself of any ownership interest in WPAL.

- 10 -

The Court will address the issues raised by Plaintiff under these standards.[8]

### A.     Bill of Attainder

Plaintiff argues that ACJA Rule 7-208(E)(3)(C)(7) is a bill of attainder as to him because it "deprives him of property merely because he fits a category," i.e., that of a disbarred lawyer. (Pl.'s Mot. at 4.)

A bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Selective Serv. Sys. v. Minn. Pub. Interest Research Group*, 468 U.S. 841, 841, 104 S. Ct. 3348, 3348 (1984) (quoting *Nixon v. Adm'r of Gen'l Servs.*, 433 U.S. 425, 468, 97 S. Ct. 2777, 2803 (1977). "An otherwise valid law is not transformed into a bill of attainder merely because it regulates conduct on the part of designated individuals or classes of individuals." *Fresno Rifle and Pistol Club, Inc. v. Van De Kamp*, 965 F.2d 723, 727 (9th Cir. 1992). *See also Nixon*, 433 U.S. at 471, 97 S. Ct. at 2804 ("However expansive the prohibition against bills of attainder, it surely was not intended to serve as a variant of the equal protection

---

[8]Defendants have raised other issues that the Court need not address at length. First, Defendants Grau and the Board argue that Plaintiff lacks standing to claim a taking of his property because Plaintiff "did not have any ownership interest in 'Why Pay a Lawyer' legal document preparation business." (Defs. Grau's and Board's Supplement to Their Resp. to Pl.'s Mot. at 2.) To support their contention, Defendants attach a transcript titled "Judgment Debtor Exam," dated October 28, 2003, which Defendants purport to be a bankruptcy court examination of Plaintiff about his financial status, including the ownership of WPAL. This transcript is uncertified and disputed by Plaintiff as inaccurate. Because Defendants have presented no evidence other than the uncertified transcript as to Plaintiff's ownership interest in WPAL, the Court cannot conclude that Plaintiff lacks standing to proceed with this claim.

In addition to contesting Plaintiff's standing to bring this claim, Defendants argue that the Board is not a jural entity and that the State Bar and Johanson are not proper Defendants. These issues were improperly raised in response to Plaintiff's Motion for Partial Summary Judgment, when they should have been brought as a motion to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). It would be patently unfair for the Court to rule on these arguments made in response to a motion for partial summary judgment brought by only one of several Plaintiffs when none of the other Plaintiffs could respond to those arguments.

- 11 -

1  doctrine, invalidating every Act of Congress or the States that legislatively burdens some
2  persons or groups but not all other plausible individuals.").

3  Plaintiff argues that ACJA Rule 7-208 "confiscates property without compensation
4  and votes punishment after the fact." (Pl.'s Mot. at 5.)  However, under the facts supplied
5  by Plaintiff, he "no longer has any 'ownership interest' in WPAL due to the fact that he
6  cannot qualify under ACJA 7-208(E)(3)(c)([7]) for same since he is a disbarred lawyer."
7  (PSOF ¶ 19.) Plaintiff does not say who or what entity allegedly confiscated his property or
8  is punishing him. From what the Court can discern from the facts provided by Plaintiff, he
9  voluntarily divested himself of any ownership interest in WPAL before or when ACJA 7-
10 208(E)(3)(c)(7) took effect. Moreover, it is obvious to the Court that ACJA Rule 7-
11 208(E)(3)(c)(7) is not punitive and was enacted to provide some regulation on the previously
12 unregulated legal document preparation business, a type of business which could easily stray
13 into the unlicenced practice of law. As Plaintiff himself says, "[p]rior to July 1, 2003,
14 'independent paralegals', now CLDPs, were without regulation by any defendant or the state
15 Supreme Court." (PSOF ¶ 14.) Nor does Plaintiff dispute that ACJA Rule 7-208(E)(3)(c)(7)
16 "applies to any and all attorneys disbarred by the highest court in any state who has not been
17 reinstated to practice law" (DSOF, Aff. of Linda Grau ¶ 7), a fact that discredits any bill of
18 attainder claim or argument that the rule was enacted solely against Plaintiff and to punish
19 Plaintiff. Therefore, ACJA Rule 7-208(E)(3)(c)(7) is not a bill of attainder, and Plaintiff is
20 not entitled to summary judgment on this issue.

21 **B.    Denial of Equal Application of the Law**

22 In arguing that ACJA Rule 7-208(E)(3)(c)(7) violates the Equal Protection Clause of
23 the U.S. Constitution, Plaintiff first asserts that "[t]here is no compelling state interest served
24 in segregating disbarred lawyers from society's rights." (Pl.'s Mot. at 8.) Later, Plaintiff
25 switches to arguing that "[e]qual protection requires that there be reasonable grounds in
26 distinguishing between individuals within same class [sic]." (Pl.'s Mot. at 9.) Then, in his
27 reply, Plaintiff claims that "[d]isbarred lawyers <u>are</u> a protected class when it comes to be [sic]
28 deprived, post disbarment, of their property, when no other nonlawyer is to be similarly

1 deprived." (Pl.'s Reply to Defs.' Resp. to Pl.'s Mot. for Partial Summ. J. ("Pl.'s Reply") at 7.) (emphasis in original).

When a challenged provision does not adversely affect a fundamental interest or involve suspect classes or groups, then it "need only be tested under the lenient standard of rationality that this Court has traditionally applied in considering equal protection challenges to regulation of economic and commercial matters." *Exxon Corp. v. Eagerton*, 462 U.S. 176, 196, 103 S. Ct. 2296, 2308 (1983) (citations omitted). A court will presume legislation is valid if the classification drawn is rationally related to a legitimate government interest. *Heller v. Doe by Doe*, 509 U.S. 313, 319, 113 S. Ct. 2637, 2643 (1993). Rational basis review "does not require the State to place any evidence in the record, let alone the extensive evidentiary showing that would be required . . . to survive heightened scrutiny." *Id.* at 316, 113 S. Ct. at 2642.

Here, ACJA Rule 7-208 states as its purpose "the need to protect the public from possible harm caused by nonlawyers providing legal services" and that the intent of the rule is to "protect the public through the certification of legal document preparers to ensure conformance to the highest ethical standards and performance of responsibilities in a professional and competent manner . . . ." ACJA Rule 7-208(C). In this case, the state has a legitimate interest in protecting the public from harm caused by nonlawyers providing legal services. Prohibiting disbarred lawyers from owning CLDP businesses is rationally related to that interest. Moreover, "courts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends." *Heller*, 509 U.S. at 321, 113 S. Ct. at 2643. Therefore, Plaintiff is denied summary judgment on his equal protection claim.

**C.     Denial of Equal Privileges and Immunities**

Plaintiff next argues that ACJA Rule 7-208(E)(3)(c)(7) violates the privileges and immunities clauses of the U.S. and Arizona Constitutions because "there cannot be conceived any compelling or legitimate state interest in denying ownership of the business at hand." (Pl.'s Mot. at 11.) Plaintiff's own citation notes that the Privileges and Immunities Clause in

- 13 -

Arizona's Constitution "serves essentially the same purpose as the Equal Protection Clause of the United States Constitution and that an allegation of violation of either clause is analyzed the same way." *Goodman v. Samaritan Health Sys.*, 990 P.2d 1061, 1069 n.10 (Ariz. App. 1999) (citation omitted). For the same reason the Court has already ruled against Plaintiff on his equal protection claim, the Court now denies Plaintiff summary judgment on his privileges and immunities claim.

### D. Seizure without Due Process

Plaintiff argues that ACJA Rule 7-208(E)(3)(c)(7) "is an unconstitutional regulatory 'taking' of an asset and a seizure without due process" because anyone who is disbarred, as of July 1, 2003, "was flatly deprived of his existing legal ownership of a business." (Pl.'s Mot. at 12.) In addition to arguing that "[t]here was no hearing, due process given, no compensation paid," Plaintiff makes the puzzling statement that were was "no chance to prove that such ownership is minor, even existed, or was innocuous or innocent. A veritable quark [sic] of ownership was forbidden." (Pl.'s Mot. at 12.)

Again, from the facts presented, the Court can only discern that Plaintiff voluntarily divested himself of any ownership in WPAL by July 1, 2003. (*See* PSOF ¶¶ 18, 19.) Thus, there can be no taking by the government of his property. Moreover, Plaintiff has not claimed that the Arizona Supreme Court failed to follow proper procedures before enacting ACJA Rule 7-208, and Plaintiff has not alleged that he requested a hearing of any sort and was denied a hearing. Thus, Plaintiff's request for summary judgment on his due process claim fails.

### E. Punishment Because of Status

Plaintiff argues that he is being punished for his disbarment by denying him ownership in a CLDP business. (Pl.'s Mot. at 11-12.) The criminal cases cited by Plaintiff are inapposite. As previously discussed, Plaintiff appears to have voluntarily divested himself of any ownership in WPAL. Thus, there can be no punishment for a voluntary act. Moreover, the Court has already found that the state has a rational basis for enacting ACJA Rule 7-208, and Plaintiff does not dispute that Rule 31 and ACJA Rule 7-208 were

"promulgated by the Arizona Supreme Court pursuant to its Constitutional authority." (DSOF ¶¶ 2, 3.) Therefore, the Court denies Plaintiff summary judgment on his claim that he is being punished for his disbarment.

**IV.     CONCLUSION**

Plaintiff's Motion for Partial Summary Judgment fails on all claims. Although Defendants have not so moved, the Court will grant Defendants partial summary judgment because there are no issues of fact remaining concerning the constitutionality of ACJA Rule 7-208. *See Kassbaum v. Steppenwolf Prods., Inc.*, 236 F.3d 487, 494 (9th Cir. 2000) ("It is generally recognized that a court has the power *sua sponte* to grant summary judgment to a non-movant when there has been a motion but no cross-motion.") (citation omitted).

**IT IS ORDERED** denying Defendant Board Members' Motion to Dismiss (Doc. 50).

**IT IS FURTHER ORDERED** denying as moot Plaintiffs' Motion for Leave to Serve Replacement Summons and Motion for an Order Issuing New Replacement Summons (Doc. 61).

**IT IS FURTHER ORDERED** denying Plaintiff Richard S. Berry's Motion for Partial Summary Judgment (Doc. 51).

**IT IS FURTHER ORDERED** granting Defendants Partial Summary Judgment as to Plaintiff Richard S. Berry, finding that ACJA Rule 7-208(E)(3)(c)(7) is constitutional.

**IT IS FURTHER ORDERED** striking Plaintiff Richard S. Berry's Supplement to his Motion for Partial Summary Judgment (Doc. 87) as an unauthorized pleading that was not considered by the Court.

DATED this 30th day of March, 2006.

_____
Susan R. Bolton
United States District Judge